## NOCERA v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

1. STREET RAILROADS—COLLISION—INJURIES TO ANIMALS—CAUSE OF DEATH—INSTRUCTIONS.

Where, in an action for death of plaintiff's horse which was injured in collision with defendant's street car, there was no evidence that the injuries caused the death of the horse, but on the contrary the evidence showed that the injuries could not of themselves have caused death without the supervention of blood poisoning or lockjaw, which was not shown

to have occurred, it was error for the court to charge that in the absence
of evidence as to the cause of death there was a legal presumption that
it occurred from the accident.

2. SAME—EVIDENCE.

In an action against a street car company for the death of plaintiff's
horse, alleged to have resulted from injuries sustained in a collision, it
was necessary for plaintiff, in the absence of a post mortem, to prove that
the injuries inflicted were adequate to cause death, or if not adequate
of themselves, that they afterwards resulted in a condition which was an
adequate cause of death, and that nothing but the accident intervened
to which the death could be attributed.

Appeal from Municipal Court of City of New York.

Action by John Nocera against the Brooklyn Heights Railroad Company. From a municipal court judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and HOOKER, RICH, MILLER, and GAYNOR, JJ.

H. F. Ives, for appellant.

M. A. Gallucci, for respondent.

HIRSCHBERG, P. J. The action is brought to recover damages to personal property alleged to have been caused by the negligence of the defendant. While the plaintiff's servants were driving his team and wagon in the borough of Queens on the night of January 25, 1905, a collision occurred with one of the defendant's cars, damaging the wagon and knocking down one of the horses. The horse received bruises upon its side which, while severe, were not essentially serious in character. There were bruises on his shoulder, an abrasion of the skin on his fetlocks, and sores and swellings of the cords from the hock to the fetlocks. A witness, presumably a verterinarian, testified that at the plaintiff's request he treated the horse on January 31st, February 3d, and 5th. After the last-named date, he saw the horse on the 15th of February, dead. The judgment recovered is chiefly for the value of the horse. There was, however, no evidence in the case tending to prove that the horse either could or did die from the injuries which were received in the collision; and, while there is an intimation or suggestion contained in the evidence offered on behalf of the defendant that the injuries might have produced the death of the horse by the supervention of blood poisoning or lockjaw, there is no evidence that they did so.

The plaintiff's witness who prescribed for the horse was asked the question: "When you saw him there was nothing in his injuries to make you think he was going to die?" to which he replied: "Well, the horse was improving." The veterinary surgeon called by the defendant testified that he examined the horse on February 1st, that he found certain abrasions only, that most of them were then beginning to heal, that he thought they were of at least a week or 10 days' standing, and, when asked if the horse could die by reason of any of the injuries which he found when he made his examination, he answered, no; that the injuries themselves could not kill. It is true that he did suggest, as already stated, that the injuries could have produced death by the intervention of lockjaw and blood poisoning, but that they ac-

tually did so produce the death of the horse there is no word of proof to be found in the case.  It was easy to make direct proof of the cause of death, even without a post mortem.  It was sufficient for the plaintiff to prove that the injuries inflicted upon the horse were adequate to cause death, or, if not adequate of themselves, that they afterwards resulted in a condition which was an adequate cause of death, and that nothing but the accident had occurred to which the death could be attributed.

The court erred in instructing the jury to the effect that in the absence of evidence as to the cause of death there was a legal presumption that it occurred from the accident.  It was incumbent on the plaintiff to establish the death as a result of the accident by a fair preponderance of evidence, and there is no presumption of law in favor of the claim.  The question was duly raised by a motion to strike out all the testimony as to the value of the horse, on the ground that it had not been shown that the injuries caused his death, and by an exception taken to the submission of the question to the jury.  The court charged as follows:

"There is no absolute testimony that these injuries were the cause of the death of the horse.  That simply left a presumption.  They had medical men on the stand, and neither of them testified that these injuries caused his death.  It is for you to determine that.  You must take into consideration the testimony of Dr. Wright, that when he left the horse last the horse was in good condition and getting better under his treatment."

The logic of the verdict under this charge is that the jury, having absolutely no evidence that the injuries either did cause or could have caused the horse's death, and being obliged to take into consideration the fact that when last seen by a surgeon he was in good condition and getting better under treatment, must have determined the cause of death adversely to the defendant on the presumption alone.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event.  All concur.